# JUDGE BUCHWALD

FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
COSENA SRL CONSTANTZA (ROMANIA)
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

07 CIV 9378

Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
COSENA SRL CONSTANTZA (ROMANIA),

                         **07-Civ-**

                Plaintiff,

   - against –

                        **VERIFIED COMPLAINT**

BODEGAS VALDIVIA, f/k/a INTERMONTE, S.A.,

                Defendant.
-----------------------------------------------------------------x

       Plaintiff COSENA SRL CONSTANTZA (ROMANIA) (hereinafter "COSENA"), by its

attorneys Freehill, Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant

BODEGAS VALDIVIA (formerly known as INTERMONTE, S.A.) (hereinafter, "VALDIVIA")

alleges upon information and belief as follows:

       1.   This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the recognition and enforcement

of a foreign maritime judgment.  This case also falls under this Court's admiralty and maritime

jurisdiction pursuant to 28 U.S.C. §1333.  Jurisdiction is also proper pursuant to the Court's

federal question jurisdiction pursuant to 28 U.S.C. §1331.  Additionally, jurisdiction is proper

pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral

Awards, codified at 9 U.S.C. §201 *et seq.* and/or pursuant to the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2.   At all times relevant hereto, COSENA was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Bd Elisabeta, No. 14, Constantza, Romania.

3.   At all times relevant hereto, Defendant VALDIVIA was and still is a foreign business entity existing under the laws of a foreign country with an office and place of business at 11408 Jerez de la Frontera, Cadiz, Spain.

4.   COSENA, as vessel owner, entered into two maritime charter party contracts with VALDIVIA (under its former name, Intermonte, S.A.), as charterer.

5.   One charter was for the M.V. TIRGU LAPUS, which charter was dated October 17, 2000. The other charter was for the M.V. SALVA, which charter was dated May 30, 2000.

6.   Both charter parties contained law and arbitration clauses which required, in the event of a dispute between the parties, arbitration at London, England, in accordance with English law.

7.   Disputes arose under both charter parties, and the disputes were heard, pursuant to the agreement of the parties, in arbitration in London, England and awards, five in total (three relating to the M.V. TIRGU LAPUS and two relating to the M.V. SALVA), were rendered in accordance with English law, all in favor of COSENA and against VALDIVIA.

### Disputes Involving the M.V. TIRGU LAPUS

8.   The dispute concerning the M.V. TIRGU LAPUS involved, in part, a claim by COSENA against VALDIVIA for unpaid demurrage and, in part, for non-payment of amounts

required pursuant to a deviation agreement.[1]  After the vessel discharged the part cargo in Almeria, Spain, it returned to Motril, where VALDIVIA arrested the vessel when it arrived at Motril for reimbursement of the amounts which VALDIVIA was required to pay.  VALDIVIA's actions in the court in Motril, Spain failed and gave rise to a detention claim by COSENA in the arbitration.

    9.    With regard to the M.V. TIRGU LAPUS, three partial final awards were issued in favor of COSENA and against VALDIVIA (then still known as Intermare), as follows:

      a.  Interim Final Award dated March 8, 2002

        (1)    $858.16 at 7.5% compounded interest on three monthly rests from January 1, 2001

        (2)    $74,478.50 at 7.5% compounded interest on three monthly rests from January 15, 2001

        (3)    $25,345 at 7.5% compounded interest on three monthly rests from January 1, 2001

        (4)    $34,210 at 7.5% compounded interest on three monthly rests from June 8, 2001

        (5)    $1,274.23 at 7.5% compounded interest on three monthly rests from July 15, 2001

        (6)    Costs and fees of £2,875 (equivalent of $5,879.78 using a conversion rate of £1 = $2.045)

      b.  Interim Final Award dated August 12, 2003

---

[1] Due to a draft restriction at the intended discharge port (Motril, Spain), the vessel had to partial discharge elsewhere (Almeria, Spain), and the parties agreed that VALDIVIA would pay an additional sum for the deviation voyage.

      (1)    £22,673.71 (equivalent of $46,372.18 at 6% compound interest on three monthly rests from March 8, 2002

      (2)    Costs and fees of £925 (equivalent of $1,891.81)

  c.  Interim Final Award dated October 25, 2005

      (1)    €9,140.27 (equivalent of $13,060.97 using a conversion rate of €1 = $1.429) at 6% compound interest on three monthly rests from March 8, 2002

      (2)    £770 (equivalent of $1,574.90) at 6% compound interest on three monthly rests from March 8, 2002

      (3)    $582.16 at 6% compound interest on three monthly rests from March 8, 2002

      (4)    Costs and fees of £1,425 (equivalent of $2,914.65)

10. In all, the U.S. dollar amount (or equivalent amount using the conversion rates noted above) owed by VALDIVIA to COSENA pursuant to the three arbitral awards in connection with the M.V. TIRGU LAPUS is $317,009.66. A copy of the three arbitral awards is annexed hereto as Exhibit 1.

11. The three arbitral awards in connection with these amounts owed by VALDIVIA to COSENA were reduced to judgments in England. Copies of the English court judgments in connection with the M.V. TIRGU LAPUS are annexed hereto as Exhibit 2.

### Dispute Involving the M.V. SALVA

12. The dispute concerning the M.V. SALVA chiefly involved a claim by COSENA against VALDIVIA for unpaid demurrage.

13. With regard to the M.V. SALVA, two partial final awards were issued in favor of COSENA and against VALDIVIA (then still known as Intermare), as follows:

    a. Interim Final Award dated March 8, 2002

        (1)    $27,378.90 at 7.5% compound interest on three monthly rests from February 15, 2001

        (2)    Costs and fees of £2,135 (equivalent to $4,366.18 using a conversion rate of £1 = $2.045)

    b. Interim Final Award dated August 12, 2003

        (1)    £7,610.14 (equivalent to $15,561.60) at 6% compound interest on three monthly rests from August 12, 2003

        (2)    Costs and fees of £675 (equivalent to $1,380.25)

14. In all, the U.S. dollar amount (or equivalent amount using the conversion rates noted above) owed by VALDIVIA to COSENA pursuant to the two arbitral awards in connection with the M.V. SALVA is $69,939.89. A copy of the two arbitral awards is annexed hereto as Exhibit 3.

15. The two arbitral awards in connection with these amounts owed by VALDIVIA to COSENA were reduced to judgments in England. Copies of the English court judgments in connection with the M.V. SALVA are annexed hereto as Exhibit 4.

16. The total amount owed as of the date of this writing is, as nearly as may presently be calculated, $386,949.55. Due demand has been made of VALDIVIA, but VALDIVIA has refused or otherwise failed to make any payment against the awards and judgments.

**VALDIVIA'S Refusal To Pay Is In Bad Faith**

17. There is no legitimate basis at all for VALDIVIA to refuse to pay the judgment. VALDIVIA's refusal or other failure to pay the judgment, which was made pursuant to a clear law and jurisdiction clause in a contract VALDIVIA executed is willful, contumacious, vexatious and in complete and utter bad faith.

18. VALDIVIA's bad faith refusal to pay on the arbitral awards has required COSENA to seek enforcement actions against VALDIVIA, including but not limited to the instant action.

19. COSENA should be awarded its attorneys fees and disbursements in connection with this action by reason of VALDIVIA's bad faith refusal to pay on the arbitral awards.

**Recognition and Enforcement**

20. The foreign arbitral awards and/or the English court judgments are final and enforceable and should be recognized and enforced as a judgment of this Court under principles of comity and in conformity with Article 53 of the New York CPLR, and in keeping with the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C §1 *et seq.*

**Maritime Attachment**

21. In all, the claim for which COSENA sues in this action, as near as presently may be estimated, totals **$386,949.55**, exclusive of attorneys fees and costs incurred in New York, no part of which has been paid by VALDIVIA, though duly demanded. COSENA specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum be insufficient to fully secure COSENA.

22. Upon information and belief, and after investigation, Defendant VALDIVIA cannot be "found" within this district for the purposes of Rule B of the Supplemental Rules of Certain

Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly

have, assets within this District comprising, *inter alia*, cash, funds, credits, debts, wire transfers,

electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or

sub-charter hire, of, belonging to, due to, from, or for the benefit of Defendant VALDIVIA

(hereinafter, "ASSETS"), including but not limited to ASSETS at, being transferred through, or

being transferred and/or wired to or from banking institutions or such other garnishees who may

be served with a copy of the Process of Maritime Attachment and Garnishment issued herein in

its own name or in its prior name, INTERMARE, S.A.

     **WHEREFORE**, Plaintiff COSENA prays:

a.     That process in due form of law according to the practice of this Court issue
against Defendant VALDIVIA, citing it to appear and answer under oath all and
singular the matters alleged, failing which a default will be taken against it in the
principal amount of $386,949.55 plus interest, costs and attorneys fees;

b.     That since Defendant cannot be found within this District pursuant to
Supplemental Rule B, all tangible or intangible property of the Defendant, up to
and including the sum of **$386,949.55** be restrained and attached, including but
not limited to any cash, funds, credits, debts, wire transfers, electronic funds
transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter
hire, and/or any other property of, belonging to, due to, from, or for the benefit of
Defendants (collectively "ASSETS"), including but not limited to such ASSETS
as may be held, received or transferred in its own name or in its prior name as
may be held, received or transferred for its benefit at, through, or within the
possession, custody or control of such banking institutions and/or any such other

garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein; and

c.    That this Court recognize and enforce the English Court Judgments and/or arbitral awards in favor of COSENA and against VALDIVIA and also retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary; and

d.    For such other, further and different relief as this Court may deem just and proper in the premises, including but not limited to an award of attorneys fees incurred in this action as a result of the bad faith refusal or failure to pay by VALDIVIA.

Dated: New York, New York
      October 19, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
COSENA SRL CONSTANTZA (ROMANIA)

By: _____

Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

Exhibit 1

# m.v. "TIRGU LAPUS"

## Charterparty dated 17th October 2000

## INTERIM FINAL AWARD

Ex 1

## IN THE MATTER OF THE ARBITRATION ACT 1996

## AND

## IN THE MATTER OF AN ARBITRATION

## BETWEEN

### COSENA SRL CONSTANTZA (ROMANIA)                    **Claimants**
**(Owners)**

## AND

### INTERMONTE S.A.                                    **Respondents**
of Seville, Spain                                      **(Charterers)**

### m.v. "TIRGU LAPUS"

### Charterparty 17th October 2000

### INTERIM FINAL AWARD

### WHEREAS:

1.      By a Charterparty on an amended "Gencon" form, concluded and dated Madrid, 17th October 2000, the Claimants (hereinafter referred to as the "Owners") chartered their vessel, m.v. "Tirgu Lapus" to the Respondents (hereinafter referred to as the "Charterers") for the carriage of a cargo of minimum 17,300 metric tonnes, up to a full and complete cargo, in Charterers'

option, cement in bulk from 1 safe berth, AA.AA Novorossiysk to 1 safe berth, AA.AA – Motril, on the terms and conditions more particularised therein.

2.      Box 25 & Clause 19 of the Charterparty provided for disputes arising out of the Charterparty to be referred to arbitration in London under English Law and provided, inter-alia, as follows: -

### Box 25

### Law and Arbitration

*"London, English Law to apply... "*

### Clause 19

### Law and Arbitration

*"(a)  This Charterparty shall be governed by and construed in accordance with English Law and any dispute arising out of this Charterparty shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 & 1979 or any statutory modification or re-enactment thereof for the time being in force.   Unless the parties agree upon a Sole Arbitrator, one Arbitrator shall be appointed by each party and the Arbitrators so appointed shall appoint a third Arbitrator, the decision of the three-man Tribunal thus constituted or any two of them, shall be final.  On the receipt by one party of the nomination in writing of the other party's Arbitrator, that party shall appoint their Arbitrator within fourteen days, failing which the decision of the single Arbitrator appointed shall be final.*

*For disputes where the total amount estimated by either party does not exceed the amount stated in Box 25, the arbitration*

*Page 3*

> *shall be conducted in accordance with the Small Claims*
> *Procedure of the London Maritime Arbitrators Association..."*

3.      Disputes having arisen, more particularised below, the Owners appointed me, the undersigned William Robertson of 47 Perrymount Road, Haywards Heath, West Sussex, RH16 3BN, as their nominated Arbitrator on 18th January 2001.

The Charterers were called upon to appoint their Arbitrator on 18th January 2001 within a period of 14 days but they failed to respond.

A further notice was given on 2nd February 2001, pursuant to the Arbitration Act 1996 but again they failed to respond.

I, therefore, accepted appointment as Sole Arbitrator in the reference on 20th March 2001 and I confirmed my acceptance to the Charterers that same day, having accepted appointment as Sole Arbitrator pursuant to Section 17(2) of the Arbitration 1996.

Under cover of a letter of 19th March 2001 from the Owners' London solicitors, I received submissions of claim, together with supporting documentation, and I laid down a timetable for further progress in the Arbitration and ordered that the Charterers served submissions by way of defence by close of business, 18th April 2001.

I received a response from the Charterers on 21st March 2001, who made a challenge to my jurisdiction in this case.

On 19th April 2001, I received an application from the Owners that, as the deadline had passed for service of submissions of defence, I make a final and peremptory order for service of the said defence.

Accordingly, on 20th April 2001 I issued a further order, in final and peremptory terms, for service of the submissions of defence by latest close of business Friday 27th April 2001.

*Page 4*

On 29th March 2001, I received a further fax message from the Charterers again expressing their opposition to my jurisdiction in this case.

Under cover of a fax message of 27th April, I received from London solicitors acting on behalf of the Charterers submissions of defence and matters proceeded from thereon by way of appropriate exchanges.

I have considered, in the light of the steps that have been taken, that the Charterers have been given every opportunity to participate in the procedure of this arbitration. I consider it appropriate, therefore, to proceed to my Final Award in the reference.

4.    The seat of the Arbitration is London, England.

5.    The disputes referred to the undersigned concerned claims by the Owners in respect of the following:

| | | |
|---|---|---|
| 1. | Demurrage at Novorossiysk | US $    858.16 |
| 2. | Damages for detention deviating to Almeria | US $ 74,478.50 |
| 3. | Costs, expenses & legal charges in relation to the wrongful arrest proceedings at Motril | |
| 4. | Owners' security and other related charges in respect of arrest at Motril | US $ 57,853.22 |
| 5. | Bank charges in relation to security for arrest | US $    1,274.23 |
| 6. | All costs and expenses including legal fees as a result of the Molina arrest proceedings | |
| 7. | All damages, losses and expense incurred as a result of the proceedings initiated against the Owners by the Charterers at Motril | |
| 8. | The Owners' claim interest and costs | |

The Charterers denied liability.

*Page 5*

6.      I received written submissions from London solicitors representing the Owners and also from London solicitors representing the Charterers and directly from the Charterers themselves. The parties were content that I should proceed to an Award on the basis of the written submissions alone without an oral attended hearing. Neither party requested a Reasoned Award.

**NOW I,** the said William Robertson, having taken upon myself the burden of Sole Arbitrator in relation to the disputes between the parties, having read the written submissions and documents produced to me and having weighed and considered the facts and the evidence, and having considered this to be an appropriate case to proceed to an Interim Final Award, **DO HEREBY MAKE, ISSUE AND PUBLISH** this my **INTERIM FINAL AWARD** as follows: -

**I FIND AND HOLD** that the Owners' claims succeed as following:

1.      The Owners succeed in their claim for load port demurrage in a sum of US $858.16.

2.      The Owners succeed in respect of their claim for delay at discharge and the wrongful arrest of the vessel by the Charterers at Motril in a total sum of US $74,478.50.

3.      The Owners are entitled to reimbursement from the Charterers for the costs of providing a guarantee to obtain the release of the vessel, following the arrest by the Charterers at Motril, in a sum of Pesetas 4,976,016 (approximately US $25,345.00). The Owners are also entitled to reimbursement from the Charterers of all related expenses, including legal fees and costs, as a result of the proceedings initiated by the Charterers in the Motril Court. These costs are currently unquantified and will be the subject of further determination for which I have reserved powers and jurisdiction.

*Page 6*

4.  The Owners' claims succeed in respect of reimbursement from the Charterers of all costs, including legal fees and expenses, and other related expenditure as a result of the arrest of the vessel by the agents, Molina at Motril. These charges are also unquantified and are to be the subject of further determination, in respect of which I have reserved powers and jurisdiction.

5.  The Owners' claim succeeds by way of reimbursement from the Charterers in respect of the judgement obtained by the agents, Molina, in the Spanish Courts in a sum of Pesetas 6,716,370 (approximately US $34,210.00).

6.  The Owners' claim in respect of bank charges in relation to the guarantees provided succeed in a sum of US $1,274.23. The Owners will also be entitled to further bank charges, as yet unquantified, which will be the subject of further determination, in respect of which I have reserved powers and jurisdiction.

**I AWARD AND ADJUDGE** that the Charterers shall forthwith pay to the Owners the sum of US $136,165.89 (One Hundred & Thirty-Six Thousand, One Hundred & Sixty-Five United States Dollars and Eighty-Nine Cents) together with interest, as detailed following, compounded at three monthly intervals, from the dates following until the date of payment.

1.  I award interest on the sum of US $858.16 at 7.5% per annum, compounded at three monthly intervals, from 1st January 2001 until the date of payment.

2.  I award interest on the sum of US $74,478.50 at a rate of 7.5% per annum, compounded at three monthly intervals, from 15th January 2001 until the date of payment.

*Page 7*

3.     I award interest on the sum of US $25,345.00 in respect of the guarantee provided to release the vessel at Motril at a rate of 7.5% per annum, compounded at three monthly intervals, from 1st January 2001 until the date of payment.

4.     I award interest on the sum of US $34,210.00 in respect of the judgement obtained by the agents at Motril at a rate of 7.5% per annum, compounded at three monthly intervals, from 8th June 2001 until the date of payment.

5.     I award interest on the sum of US $1,274.23 in respect of bank charges on the guarantees, at a rate of 7.5% per annum from 15th July 2001 until the date of payment.

**I FURTHER AWARD AND ADJUDGE** that the Charterers shall bear and pay their own and the Owners' recoverable costs of this interim reference (the latter to be determined by me if so requested, for which determination I hereby reserve powers and jurisdiction) and that the Charterers shall bear and pay the cost of this my **INTERIM FINAL AWARD**, which **I HEREBY DETERMINE AND SETTLE** in the sum of £2,875.00, inclusive of my fees, interlocutory charges and disbursements.

**ALWAYS PROVIDED** that should the Owners in the first instance have paid any amount in respect of the cost of this Award, they shall be entitled to immediate reimbursement from the Charterers of the sum so paid, together with interest thereon at the rate of 7% per annum, compounded at three monthly intervals, from the date of this Award until the date of settlement.

**I DECLARE** that this Award, although interim in the reference, is **FINAL** as to the matters hereby determined and **I RESERVE JURISDICTION**

*Page 8*

to myself to make a further Award or Awards, as may be appropriate, in respect of all outstanding disputes between the parties.

**GIVEN** under my hand in London          8th March 2002

**WILLIAM ROBERTSON**          **WITNESS**

## IN THE MATTER OF THE ARBITRATION ACT 1996

## AND

## IN THE MATTER OF AN ARBITRATION

## BETWEEN

## COSENA SRL CONSTANTZA (ROMANIA)

**Claimants**
**(Owners)**

## AND

## INTERMONTE S.A. of Seville, Spain

**Respondents**
**(Charterers)**

# m.v. "TIRGU LAPUS"

# Charterparty dated 17th October 2000

# INTERIM FINAL AWARD

# m.v. "TIRGU LAPUS"

## Charterparty dated 17th October 2000

# INTERIM FINAL AWARD AS TO COSTS

**IN THE MATTER OF THE ARBITRATION ACT 1996**

**AND**

**IN THE MATTER OF AN ARBITRATION**

**BETWEEN**

**COSENA SRL CONSTANTZA (ROMANIA)**          **Claimants**
                                             **(Owners)**

**AND**

**INTERMONTE S.A.**                          **Respondents**
**of Seville, Spain**                        **(Charterers)**

**m.v. "TIRGU LAPUS"**

**Charterparty 17th October 2000**

**INTERIM FINAL AWARD AS TO COSTS**

**WHEREAS:**

1.      By a Charterparty on an amended "Gencon" form, concluded and dated Madrid, 17th October 2000, the Claimants (hereinafter referred to as the "Owners") chartered their vessel, m.v. "Tirgu Lapus" to the Respondents (hereinafter referred to as the "Charterers") for the carriage of a cargo of minimum 17,300 metric tonnes, up to a full and complete cargo, in Charterers'

option, cement in bulk from 1 safe berth, AA.AA Novorossiysk to 1 safe berth, AA.AA – Motril, on the terms and conditions more particularised therein.

2.    Box 25 & Clause 19 of the Charterparty provided for disputes arising out of the Charterparty to be referred to arbitration in London under English Law and provided, inter-alia, as follows: -

### Box 25

### Law and Arbitration

*"London, English Law to apply... "*

### Clause 19

### Law and Arbitration

*"(a)  This Charterparty shall be governed by and construed in accordance with English Law and any dispute arising out of this Charterparty shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 & 1979 or any statutory modification or re-enactment thereof for the time being in force.    Unless the parties agree upon a Sole Arbitrator, one Arbitrator shall be appointed by each party and the Arbitrators so appointed shall appoint a third Arbitrator, the decision of the three-man Tribunal thus constituted or any two of them, shall be final.  On the receipt by one party of the nomination in writing of the other party's Arbitrator, that party shall appoint their Arbitrator within fourteen days, failing which the decision of the single Arbitrator appointed shall be final.*

*For disputes where the total amount estimated by either party does not exceed the amount stated in Box 25, the arbitration*

*Page 3*

> *shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association..."*

3.      Disputes having arisen, more particularised below, the Owners appointed me, the undersigned William Robertson of 47 Perrymount Road, Haywards Heath, West Sussex, RH16 3BN, as their nominated Arbitrator on 18th January 2001.

The Charterers were called upon to appoint their Arbitrator on 18th January 2001 within a period of 14 days but they failed to respond.

A further notice was given on 2nd February 2001, pursuant to the Arbitration Act 1996 but again they failed to respond.

I, therefore, accepted appointment as Sole Arbitrator in the reference on 20th March 2001 and I confirmed my acceptance to the Charterers that same day, having accepted appointment as Sole Arbitrator pursuant to Section 17(2) of the Arbitration 1996.

Under cover of a letter of 19th March 2001 from the Owners' London solicitors, I received submissions of claim, together with supporting documentation, and I laid down a timetable for further progress in the Arbitration and ordered that the Charterers served submissions by way of defence by close of business, 18th April 2001.

I received a response from the Charterers on 21st March 2001, who made a challenge to my jurisdiction in this case.

On 19th April 2001, I received an application from the Owners that, as the deadline had passed for service of submissions of defence, I make a final and peremptory order for service of the said defence.

Accordingly, on 20th April 2001 I issued a further order, in final and peremptory terms, for service of the submissions of defence by latest close of business Friday 27th April 2001.

*Page 4*

On 29th March 2001, I received a further fax message from the Charterers again expressing their opposition to my jurisdiction in this case.

Under cover of a fax message of 27th April, I received from London solicitors acting on behalf of the Charterers submissions of defence and matters proceeded from thereon by way of appropriate exchanges.

I have considered, in the light of the steps that have been taken, that the Charterers have been given every opportunity to participate in the procedure of this arbitration. I consider it appropriate, therefore, to proceed to my Final Award in the reference.

4.    The seat of the Arbitration is London, England.

5.    The disputes referred to the undersigned concerned claims by the Owners in respect of the following:

| | | | |
|---|---|---|---|
| 1. | Demurrage at Novorossiysk | US $ | 858.16 |
| 2. | Damages for detention deviating to Almeria | US $ | 74,478.50 |
| 3. | Costs, expenses & legal charges in relation to the wrongful arrest proceedings at Motril | | |
| 4. | Owners' security and other related charges in respect of arrest at Motril | US $ | 57,853.22 |
| 5. | Bank charges in relation to security for arrest | US $ | 1,274.23 |
| 6. | All costs and expenses including legal fees as a result of the Molina arrest proceedings | | |
| 7. | All damages, losses and expense incurred as a result of the proceedings initiated against the Owners by the Charterers at Motril | | |
| 8. | The Owners' claim interest and costs | | |

The Charterers denied liability.

*Page 5*

6.    On 8th March 2002, I published an Interim Final Award in which I held that the Owners succeeded to the extent of the amount of US $136,165.89.

In addition, I awarded the Owners interest on the respective sums at a rate of 7.5% per annum, compounded at three monthly intervals, to run from various dates until the date of payment.

I also awarded the Owners their recoverable costs of the interim reference and specifically reserved to myself appropriate powers and jurisdiction to determine and settle the costs of the interim reference if agreement could not be reached between the parties.

7.    It proved impossible for the Owners to agree their recoverable costs of the reference with the Charterers. They, therefore, submitted to me under cover of a fax of 3rd July 2003 from their London solicitors, a schedule of the costs and disbursements claimed for determination.

I invited a response from the Charterers on the schedule and requested that they respond with their submissions by latest close of business Friday 18th July 2003. I received no response from the Charterers and on 22nd July 2003 made a further order, in final and peremptory terms, that submissions be received on the costs claimed by Friday 25th July 2003. Nothing further was heard from the Charterers.

I have considered that the Charterers have been given every conceivable opportunity to participate in this interim reference as to costs and, as they have failed to do so, I have considered it appropriate to proceed to my Award on the basis of the submissions made by the Owners.

8.    In considering the costs submitted to me for determination, I have applied the general principle that the costs must be reasonably and properly incurred, as well as taking into consideration appropriate market rates for London maritime solicitors for the periods in question and, of course, the complexity and nature of the claim itself.

*Page 6*

The total sum claimed by the Owners amounted to £22,673.71, which comprised their solicitors' profit costs of £19,530.00 and disbursements of £3,143.71.

In support of the schedule of costs, the Owners provided the normal pre-assessment certificate.

The charging rates in the schedule of costs, as claimed by the Owners, included a rate of £220.00 for the Partner involved in the case.

9.    I have considered the appropriate market rates for London solicitors during the period concerned of 2000 to 2002.

The rate charged of £220 per hour averaged for that period has resulted in an overall charging rate of £220 per hour, which is more than reasonable in the circumstances.

I have no hesitation, therefore, in allowing the rate as charged by the Partner at £220 per hour.

I turn now to the time charged in this case of 55.5 hours, amounting to £12,210.00.

This case undoubtedly involved many complex issues, involving as it did intensive investigation and involving the London solicitors in extensive correspondence with their Spanish counterparts heavily involved in the arrest proceedings and relative to arguments as to jurisdiction involving the Spanish courts.  In addition, extensive submissions had to be made before the Arbitration Tribunal, all of which resulted undoubtedly in a considerable amount of time having to be expended in the case.

I am satisfied that the time expended by the Partner involved was fair and reasonable and I have allowed the time claimed in full.

The profit costs also included letters, fax messages and e-mails, as well as telephone attendances, many of which were in respect of the investigation being conducted in Spain. I have allowed those profit costs in full.

10.    I turn now to the question of disbursements, the majority of which related to the attendance of the Owners' Spanish correspondent lawyers, Lebrero & Co. Those attendance costs and other related disbursements are awarded in full in the sum of £3,143.71.

I find, therefore, that the Owners' claims in relation to their costs in respect of the Interim Final Award dated 8th March 2002 succeed in full in the sum of £22,673.71.

**NOW I,** the undersigned William Robertson, having taken upon myself the burden of Sole Arbitrator in relation to the disputes between the parties, having read the written submissions and documents produced to me, and having weighed and considered the facts and the evidence, and having considered this to be an appropriate case to proceed to an Interim Award As To Costs, **DO HEREBY MAKE, ISSUE AND PUBLISH** this my **INTERIM FINAL AWARD AS TO COSTS** as follows: -

**I HEREWITH DETERMINE & SETTLE** the Owners' costs of the reference in a total sum of £22,673.71.

**I AWARD AND ADJUDGE** that the Charterers shall forthwith pay to the Owners the sum of £22,673.71 (Twenty-Two Thousand, Six Hundred & Seventy-Three Pounds Sterling and Seventy-One Pence) together with interest at a rate of 6% per annum, compounded at three monthly intervals, from 8th March 2002 until the date of payment.

*Page 8*

**I FURTHER AWARD AND ADJUDGE** that the Charterers shall bear their own and the Owners' recoverable costs of this reference as to costs, to be assessed by me if so requested, for which assessment I hereby reserve powers and jurisdiction, and that the Charterers shall also bear and pay the cost of this my **INTERIM FINAL AWARD AS TO COSTS**, which **I HEREBY DETERMINE AND SETTLE** in the sum of £925.00, inclusive of my fees and interlocutory charges.

**ALWAYS PROVIDED** that if, in the first instance, the Owners shall have paid any sum in respect of the cost of this Award, they shall be entitled to immediate reimbursement from the Charterers of the sum so paid, together with interest thereon at the rate of 6% per annum, compounded at three monthly intervals, from the date of this Award until the date of reimbursement.

**I DECLARE** that this Award, although interim in the reference, is **FINAL** as to the matters hereby determined and **I RESERVE JURISDICTION** to myself to make a further Award or Awards, as may be appropriate, in respect of all outstanding disputes between the parties.

**GIVEN** under my hand in London                    12th August 2003

**WILLIAM ROBERTSON**                    **WITNESS**

**IN THE MATTER OF THE ARBITRATION ACT 1996**

**AND**

**IN THE MATTER OF AN ARBITRATION**

**BETWEEN**

**COSENA SRL CONSTANTZA (ROMANIA)**

**Claimants**
**(Owners)**

**AND**

**INTERMONTE S.A. of Seville, Spain**

**Respondents**
**(Charterers)**

## m.v. "TIRGU LAPUS"

## Charterparty dated 17th October 2000

# INTERIM FINAL AWARD AS TO COSTS

# m.v. "TIRGU LAPUS"

## Charterparty dated 17th October 2000

# SECOND INTERIM FINAL AWARD

## IN THE MATTER OF THE ARBITRATION ACT 1996

## AND

## IN THE MATTER OF AN ARBITRATION

## BETWEEN

### COSENA SRL CONSTANTZA (ROMANIA)          Claimants
                                                      (Owners)

## AND

### INTERMONTE S.A.                              Respondents
of Seville, Spain                                    (Charterers)


### m.v. "TIRGU LAPUS"

### Charterparty 17th October 2000

### SECOND INTERIM FINAL AWARD

### WHEREAS:

1.      By a Charterparty on an amended "Gencon" form, concluded and dated Madrid, 17th October 2000, the Claimants (hereinafter referred to as the "Owners") chartered their vessel, m.v. "Tirgu Lapus" to the Respondents (hereinafter referred to as the "Charterers") for the carriage of a cargo of minimum 17,300 metric tonnes, up to a full and complete cargo, in Charterers'

option, cement in bulk from 1 safe berth, AA.AA Novorossiysk to 1 safe berth, AA.AA – Motril, on the terms and conditions more particularised therein.

2.     Box 25 & Clause 19 of the Charterparty provided for disputes arising out of the Charterparty to be referred to arbitration in London under English Law and provided, inter-alia, as follows: -

### Box 25

### Law and Arbitration

*"London, English Law to apply..."*

### Clause 19

### Law and Arbitration

*"(a)  This Charterparty shall be governed by and construed in accordance with English Law and any dispute arising out of this Charterparty shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 & 1979 or any statutory modification or re-enactment thereof for the time being in force.    Unless the parties agree upon a Sole Arbitrator, one Arbitrator shall be appointed by each party and the Arbitrators so appointed shall appoint a third Arbitrator, the decision of the three-man Tribunal thus constituted or any two of them, shall be final.   On the receipt by one party of the nomination in writing of the other party's Arbitrator, that party shall appoint their Arbitrator within fourteen days, failing which the decision of the single Arbitrator appointed shall be final.*

*For disputes where the total amount estimated by either party does not exceed the amount stated in Box 25, the arbitration*

*Page 3*

> *shall be conducted in accordance with the Small Claims*
> *Procedure of the London Maritime Arbitrators Association..."*

3.      Disputes having arisen, more particularised below, the Owners appointed me, the undersigned William Robertson of 47 Perrymount Road, Haywards Heath, West Sussex, RH16 3BN, as their nominated Arbitrator on 18th January 2001.

The Charterers were called upon to appoint their Arbitrator on 18th January 2001 within a period of 14 days but they failed to respond.

A further notice was given on 2nd February 2001, pursuant to the Arbitration Act 1996 but again they failed to respond.

I, therefore, accepted appointment as Sole Arbitrator in the reference on 20th March 2001 and I confirmed my acceptance to the Charterers that same day, having accepted appointment as Sole Arbitrator pursuant to Section 17(2) of the Arbitration 1996.

Under cover of a letter of 19th March 2001 from the Owners' London solicitors, I received submissions of claim, together with supporting documentation, and I laid down a timetable for further progress in the Arbitration and ordered that the Charterers served submissions by way of defence by close of business, 18th April 2001.

I received a response from the Charterers on 21st March 2001, who made a challenge to my jurisdiction in this case.

On 19th April 2001, I received an application from the Owners that, as the deadline had passed for service of submissions of defence, I make a final and peremptory order for service of the said defence.

Accordingly, on 20th April 2001 I issued a further order, in final and peremptory terms, for service of the submissions of defence by latest close of business Friday 27th April 2001.

*Page 4*

On 29th March 2001, I received a further fax message from the Charterers again expressing their opposition to my jurisdiction in this case.

Under cover of a fax message of 27th April, I received from London solicitors acting on behalf of the Charterers submissions of defence and matters proceeded from thereon by way of appropriate exchanges.

4.    The seat of the Arbitration is London, England.

5.    The disputes referred to the undersigned concerned claims by the Owners in respect of the following:

|   |   |   |   |
|---|---|---|---|
| 1. | Demurrage at Novorossiysk | US $ | 858.16 |
| 2. | Damages for detention deviating to Almeria | US $ | 74,478.50 |
| 3. | Costs, expenses & legal charges in relation to the wrongful arrest proceedings at Motril | | |
| 4. | Owners' security and other related charges in respect of arrest at Motril | US $ | 57,853.22 |
| 5. | Bank charges in relation to security for arrest | US $ | 1,274.23 |
| 6. | All costs and expenses including legal fees as a result of the Molina arrest proceedings | | |
| 7. | All damages, losses and expense incurred as a result of the proceedings initiated against the Owners by the Charterers at Motril | | |
| 8. | The Owners' claim interest and costs | | |

The Charterers denied liability.

6.    On 8th March 2002, I published an Interim Final Award, in which I held that the Owners' claims succeeded in a total sum of US $136,165.89, together with interest and costs.

*Page 5*

In my Interim Final Award there were certain unquantified claims at that stage, which were left over for further determination, in respect of outstanding costs, legal fees and expenses relating to court actions in the Motril Court.

I received the further, now quantified, legal expenses and bank charges under cover of a facsimile from the Claimants' London solicitors on 28th September 2005. On that day I communicated with the Respondents, Intermonte SA in Seville, requesting their comments on the schedules of the claimed expenditure, to be received by latest close of business Friday 7th October 2005. I heard nothing whatsoever from the Charterers and considered in the circumstances that it was appropriate for me to proceed with my further Interim Final Award and I have now done so.

7.    Specifically with regard to Item 3 of my findings, I concluded that the Owners were entitled to reimbursement from the Charterers of all related expenses, including legal fees and costs, as a result of the proceedings initiated by the Charterers in the Motril Court. Those costs were unquantified at the time but I have been advised that those legal fees and costs have now been paid by the Charterers.

8.    In respect of Item 4 of my findings in my Award of 8th March 2002, I found that the Owners' claims succeeded in respect of reimbursement from the Charterers of all costs, including legal fees and expenses, and other related expenditure as a result of the arrest of the vessel by the agents, Molina, in the Motril Court. At that time, these charges were also unquantified but the Owners have now produced those costs, which are as follows:

1.    A fee note from Lebrero & Co. (Advocates) in a sum of Euros 7,789.36

2.    A schedule of the costs of Hill Taylor Dickinson in relation to security / lifting of the arrest in the Spanish courts, amounting to £770.00

*Page 6*

With regard to the expenditure, including fees and expenses, incurred by Lebrero & Co., their invoice contained a good breakdown of the fees and expenses incurred, including fees amounting to 18 hours at Euros 275 per hour for a Partner and 4 hours for an Associate Solicitor at Euros 200 per hour. Those charges are fair and reasonable and I have allowed them in full.

With regard to further expenditure, including such items as communication charges and the charges of the "Procurador" at Motril, in a total sum of Euros 2,039.36, I consider these charges to be fair and reasonable and they are allowed in full.

Turning now to the schedule of costs in relation to London solicitors, Hill Taylor Dickinson, the schedule consists of a rate of £220 per hour charged for the Partner involved.

I have considered the hourly rate charged by the Partner to be fair and reasonable for the period concerned, i.e. November / December 2000, taking into consideration appropriate market rates for London maritime solicitors at that time and the nature of the case itself.

The time spent in relation to the issues under consideration concerning the lifting of the vessel's arrest in Spain are to be considered fair and reasonable and accordingly I have allowed the total sum claimed of £770 in the circumstances.

9.      Pursuant to Item 6 of my findings in my Award of 8th March 2002, I awarded the Owners bank charges in relation to the guarantees provided, which amounted to US $1,274.23 at that time. I also found that the Owners would be entitled to further bank charges, at that stage unquantified, which were to be the subject of further determination.

The Owners have now provided this information in the respective sums of US $582.16 and Euros 1,350.91, in accordance with their statement.

*Page 7*

Following the conclusions I reached in my Interim Final Award of 8th March 2002, I now find those additional bank charges in respect of the guarantees provided by the Owners succeed in the respective sums of US $582.16 and Euros 1,350.91.

10.    In summary, therefore, I find that the Owners' claims succeed as follows:

| | | | |
|---|---|---|---|
| 1. | Professional charges, Lebrero & Co. | Euros | 7,789.36 |
| 2. | Professional charges, Hill Taylor Dickinson | £ | 770.00 |
| 3. | Bank charges in respect of guarantees | US $ | 582.16 |
| | and | Euros | 1,350.91 |

**I FIND AND HOLD** that the Owners' claims for legal charges and bank charges succeed in the respective sums of Euros 9,140.27, US $582.16 and £770.00.

**I AWARD AND ADJUDGE** that the Charterers shall forthwith pay to the Owners the respective sums of Euros 9,140.27 (Nine Thousand, One Hundred & Forty Euros & Twenty-Seven Cents), £770.00 (Seven Hundred & Seventy Pounds Sterling) and US $582.16 (Five Hundred & Eighty-Two United States Dollars and Sixteen Cents), together with interest on the respective sums at a commercial rate of 6% per annum, compounded at three monthly intervals, from 8th March 2002 until the date of payment by the Charterers.

**I FURTHER AWARD AND ADJUDGE** that the Charterers shall bear and pay their own and the Owners' recoverable costs of this interim reference (the latter to be determined by me if so requested, for which determination I hereby reserve powers and jurisdiction) and that the Charterers shall bear and pay the cost of this my **INTERIM FINAL AWARD**, which **I HEREBY**

*Page 8*

**DETERMINE AND SETTLE** in the sum of £1,425.00, inclusive of my fees, interlocutory charges and disbursements.

**ALWAYS PROVIDED** that should the Owners in the first instance have paid any amount in respect of the cost of this Award, they shall be entitled to immediate reimbursement from the Charterers of the sum so paid, together with interest thereon at the rate of 6.5% per annum, compounded at three monthly intervals, from the date of this Award until the date of settlement.

**I DECLARE** that this Award, although interim in the reference, is **FINAL** as to the matters hereby determined and **I RESERVE JURISDICTION** to myself to make a further Award or Awards, as may be appropriate, in respect of any further outstanding disputes between the parties.

**GIVEN** under my hand in London          25th October 2005

...................................          ...................................
**WILLIAM ROBERTSON**                         **WITNESS**

## IN THE MATTER OF THE ARBITRATION ACT 1996

## AND

## IN THE MATTER OF AN ARBITRATION

## BETWEEN

## COSENA SRL CONSTANTZA (ROMANIA)

**Claimants**
**(Owners)**

## AND

## INTERMONTE S.A. of Seville, Spain

**Respondents**
**(Charterers)**

# m.v. "TIRGU LAPUS"

# Charterparty dated 17th October 2000

---

# SECOND INTERIM FINAL AWARD

---

# Exhibit 2

<u>IN THE HIGH COURT OF JUSTICE</u>
<u>QUEEN'S BENCH DIVISION</u>
<u>COMMERCIAL COURT</u>

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>
<u>AND</u>
<u>IN THE MATTER OF AN ARBITRATION</u>

Claim no. 2007 Folio 1053



**BETWEEN**

### COSENA SRL CONSTANZA (ROMANIA)

**Claimant**

**and**

### INTERMONTE S.A. SEVILLA (SPAIN) (now renamed BODEGAS VALDIVIA S.A.)
**Respondent**

### M/V "TIRGU LAPUS"

### Charterparty dated 17th October 2000

---

### JUDGMENT

---

**UPON** a Tribunal consisting of sole arbitrator Mr William Robertson publishing an award dated 8th March 2002 and further to Mr Justice Tomlinson's Order dated 26th June 2007 giving liberty to enforce the said award and to enter judgment in terms of the said award

**IT IS ORDERED, ADJUDGED AND DECLARED** that:

1.  the Respondent pay to the Claimant the sum of US$ 136,165.89 in respect of the judgment amount together with compound interest thereon; and

2.  the Respondent pay to the Claimant the sum of £2,875.00 in respect of Award costs and compound interest thereon.

Dated this    5th    day of ⟨signature⟩    2007

*Ex 2*

**IN THE HIGH COURT OF JUSTICE**
**QUEEN'S BENCH DIVISION**
**COMMERCIAL COURT**

**IN THE MATTER OF THE ARBITRATION ACT 1996**
**AND**
**IN THE MATTER OF AN ARBITRATION**

**BETWEEN**

**Claim no. 2007 Folio 1053**



COSENA SRL CONSTANZA (ROMANIA)

**Claimant**

**And**

**INTERMONTE S.A. SEVILLA (SPAIN) (now renamed BODEGAS VALDIVIA S.A.)**
**Respondent**

**M/V "TIRGU LAPUS"**

**Charterparty dated 17th October 2000**

---

**JUDGMENT**

---

**UPON** a Tribunal consisting of sole arbitrator Mr William Robertson publishing an award dated 12th August 2003 and further to Mr Justice Tomlinson's Order dated 26th June 2007 giving liberty to enforce the said award and to enter judgment in terms of the said award

**IT IS ORDERED, ADJUDGED AND DECLARED** that:

1.      the Respondent pay to the Claimant the sum of £22,673.71 in respect of the judgment amount together with compound interest thereon; and

2.      the Respondent pay to the Claimant the sum of £925.00 in respect of Award costs and compound interest thereon.

Dated this  5th  day of  October     2007

**IN THE HIGH COURT OF JUSTICE**
**QUEEN'S BENCH DIVISION**
**COMMERCIAL COURT**

<span style="float:right">Claim no. 2007 Folio 1053</span>

**IN THE MATTER OF THE ARBITRATION ACT 1996**
**AND**
**IN THE MATTER OF AN ARBITRATION**



BETWEEN

### COSENA SRL CONSTANZA (ROMANIA)

<span style="float:right">**Claimant**</span>

**And**

**INTERMONTE S.A. SEVILLA (SPAIN) (now renamed BODEGAS VALDIVIA S.A.)**

<span style="float:right">**Respondent**</span>

### M/V "TIRGU LAPUS"

### Charterparty dated 17th October 2000

---

### JUDGMENT

---

**UPON** a Tribunal consisting of sole arbitrator Mr William Robertson publishing an award dated 25th October 2005 and further to Mr Justice Tomlinson's Order dated 26th June 2007 giving liberty to enforce the said award and to enter judgment in terms of the said award

**IT IS ORDERED, ADJUDGED AND DECLARED** that:

1.  the Respondent pay to the Claimant the sum of Euros 9,140.27, £770.00 and US$ 582.16 in respect of the Claimant's costs together with compound interest thereon; and

2.  the Respondent pay to the Claimant the sum of £1,425.00 in respect of Award costs and compound interest thereon.

Dated this ~~S~~ day of ~~October~~ 2007

Exhibit 3

# m.v. "SALVA"

## Charterparty dated 30th May 2000

# FINAL ARBITRATION AWARD

Ex 3

## IN THE MATTER OF THE ARBITRATION ACT 1996

## AND

## IN THE MATTER OF AN ARBITRATION

## BETWEEN

### COSENA SRL CONSTANTZA (ROMANIA)          Claimants
                                             (Owners)

## AND

### INTERMONTE S.A.                          Respondents
of Seville, Spain                            (Charterers)

### m.v. "SALVA"

### Charterparty 30th May 2000

### FINAL ARBITRATION AWARD

## WHEREAS:

1.      By a Charterparty on an amended "Gencon" form, concluded and dated Madrid, 30th May 2000, the Claimants (hereinafter referred to as the "Owners") chartered their vessel, m.v. "Salva " to the Respondents (hereinafter referred to as the "Charterers") for the carriage of a cargo of minimum 22,000 metric tonnes, up to a full and complete cargo, in Charterers' option, cement in bulk from 1 safe

port, Novorossiysk to 1/ safe berths, Huelva – Barcelona range (discharge port rotation in Charterers' option), on the terms and conditions more particularised therein.

2.    Box 25 & Clause 19 of the Charterparty provided for disputes to be referred to arbitration in London under English Law and provided, inter-alia, as follows: -

### Box 25

### Law and Arbitration

*"London, English Law to apply..."*

### Clause 19

### Law and Arbitration

*"(a) This Charterparty shall be governed by and construed in accordance with English Law and any dispute arising out of this Charterparty shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 & 1979 or any statutory modification or re-enactment thereof for the time being in force.   Unless the parties agree upon a Sole Arbitrator, one Arbitrator shall be appointed by each party and the Arbitrators so appointed shall appoint a third Arbitrator, the decision of the three-man Tribunal thus constituted or any two of them, shall be final.  On the receipt by one party of the nomination in writing of the other party's Arbitrator, that party shall appoint their Arbitrator within fourteen days, failing which the decision of the single Arbitrator appointed shall be final.*

*For disputes where the total amount estimated by either party does not exceed the amount stated in Box 25, the arbitration*

> *shall be conducted in accordance with the Small Claims*
> *Procedure of the London Maritime Arbitrators Association..."*

3.      Disputes having arisen, more particularised below, the Owners appointed me, the undersigned William Robertson of 47 Perrymount Road, Haywards Heath, West Sussex, RH16 3BN, as their nominated Arbitrator on 18th January 2001.

The Charterers were called upon to appoint their Arbitrator on 18th January 2001 within a period of 14 days but they failed to respond.

A further notice was given on 2nd February 2001, pursuant to the Arbitration Act 1996 but again they failed to respond.

I, therefore, accepted appointment as Sole Arbitrator in the reference on 20th March 2001 and I confirmed my acceptance to the Charterers that same day, having accepted appointment as Sole Arbitrator pursuant to Section 17(2) of the Arbitration 1996.

Under cover of a letter of 19th March 2001 from the Owners' London solicitors, I received submissions of claim, together with supporting documentation, and I laid down a timetable for further progress in the Arbitration and ordered that the Charterers served submissions by way of defence by close of business, 18th April 2001.

I received a response from the Charterers on 21st March 2001, who made a challenge to my jurisdiction in this case.

On 19th April 2001, I received an application from the Owners that, as the deadline had passed for service of submissions of defence, I make a final and peremptory order for service of the said defence.

Accordingly, on 20th April 2001 I issued a further order, in final and peremptory terms, for service of the submissions of defence by latest close of business Friday 27th April 2001.

On 29th March 2001, I received a further fax message from the Charterers again expressing their opposition to my jurisdiction in this case.

Under cover of a fax message of 27th April, I received from London solicitors acting on behalf of the Charterers submissions of defence and matters proceeded from thereon by way of appropriate exchanges.

I have considered, in the light of the steps that have been taken, that the Charterers have been given every opportunity to participate in the procedure of this arbitration. I consider it appropriate, therefore, to proceed to my Final Award in the reference.

4.    The seat of the Arbitration is London, England.

5.    The disputes referred to the undersigned concerned claims by the Owners in respect of a balance of demurrage due and owing on 3 voyages under the terms of the Charterparty in a sum of US $27,697.93, together with interest and costs.

The Charterers denied liability.

6.    I received written submissions from London solicitors representing the Owners and also from London solicitors representing the Charterers and directly from the Charterers themselves. The parties were content that I should proceed to an Award on the basis of the written submissions alone without an oral attended hearing. Neither party requested a Reasoned Award.


**NOW I,** the said William Robertson, having taken upon myself the burden of Sole Arbitrator in relation to the disputes between the parties, having read the written submissions and documents produced to me and having weighed and considered the facts and the evidence, **DO HEREBY MAKE, ISSUE AND PUBLISH** this my **FINAL AWARD** as follows: -

*Page 5*

**I FIND AND HOLD** that the Owners' claims in respect of an outstanding balance of demurrage succeed in the total sum of US $27,378.90.

**I AWARD AND ADJUDGE** that the Charterers shall forthwith pay to the Owners the sum of US $27,378.90 (Twenty-Seven Thousand, Three Hundred & Seventy-Eight United States Dollars and Ninety Cents) together with interest thereon at a rate of 7.5% per annum from 15th February 2001, compounded at three monthly intervals until the date of payment.

**I FURTHER AWARD AND ADJUDGE** that the Charterers shall bear and pay their own and the Owners' recoverable costs of the reference (the latter to be determined by me if so requested, for which determination I hereby reserve powers and jurisdiction) and that the Charterers do bear and pay the costs of this my **FINAL AWARD**, which **I HEREBY DETERMINE AND SETTLE** in the sum of £2,135.00, inclusive of my fees, interlocutory charges and disbursements.

**ALWAYS PROVIDED** that should the Owners in the first instance have paid any amount in respect of the cost of this Award, they shall be entitled to immediate reimbursement from the Charterers of the sum so paid, together with interest thereon at the rate of 6% per annum, compounded at three monthly intervals, from the date of this Award until the date of settlement.

**GIVEN** under my hand in London                    8th March 2002

_____          _____
**WILLIAM ROBERTSON**                              **WITNESS**

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

BETWEEN

COSENA SRL CONSTANTZA (ROMANIA)

Claimants
(Owners)

AND

INTERMONTE S.A. of Seville, Spain

Respondents
(Charterers)

# m.v. "SALVA"

# Charterparty dated 30th May 2000

# FINAL ARBITRATION AWARD

# m.v. "SALVA"

## Charterparty dated 30th May 2000

# FINAL AWARD AS TO COSTS

## IN THE MATTER OF THE ARBITRATION ACT 1996

## AND

## IN THE MATTER OF AN ARBITRATION

## BETWEEN

## COSENA SRL CONSTANTZA (ROMANIA)          Claimants
                                                                                    (Owners)

## AND

## INTERMONTE S.A.                                            Respondents
of Seville, Spain                                                      (Charterers)

## m.v. "SALVA"

## Charterparty 30th May 2000

## FINAL AWARD AS TO COSTS

## WHEREAS:

1.      By a Charterparty on an amended "Gencon" form, concluded and dated Madrid, 30th May 2000, the Claimants (hereinafter referred to as the "Owners") chartered their vessel, m.v. "Salva " to the Respondents (hereinafter referred to as the "Charterers") for the carriage of a cargo of minimum 22,000 metric tonnes, up to a full and complete cargo, in Charterers' option, cement in bulk from 1 safe

port, Novorossiysk to 1/ safe berths, Huelva – Barcelona range (discharge port rotation in Charterers' option), on the terms and conditions more particularised therein.

2.      Box 25 & Clause 19 of the Charterparty provided for disputes to be referred to arbitration in London under English Law and provided, inter-alia, as follows: -

### Box 25

### Law and Arbitration

*"London, English Law to apply... "*

### Clause 19

### Law and Arbitration

*"(a) This Charterparty shall be governed by and construed in accordance with English Law and any dispute arising out of this Charterparty shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 & 1979 or any statutory modification or re-enactment thereof for the time being in force.    Unless the parties agree upon a Sole Arbitrator, one Arbitrator shall be appointed by each party and the Arbitrators so appointed shall appoint a third Arbitrator, the decision of the three-man Tribunal thus constituted or any two of them, shall be final.    On the receipt by one party of the nomination in writing of the other party's Arbitrator, that party shall appoint their Arbitrator within fourteen days, failing which the decision of the single Arbitrator appointed shall be final.*

*For disputes where the total amount estimated by either party does not exceed the amount stated in Box 25, the arbitration*

> *shall be conducted in accordance with the Small Claims*
> *Procedure of the London Maritime Arbitrators Association... "*

3.      Disputes having arisen, more particularised below, the Owners appointed me, the undersigned William Robertson of 47 Perrymount Road, Haywards Heath, West Sussex, RH16 3BN, as their nominated Arbitrator on 18th January 2001.

The Charterers were called upon to appoint their Arbitrator on 18th January 2001 within a period of 14 days but they failed to respond.

A further notice was given on 2nd February 2001, pursuant to the Arbitration Act 1996 but again they failed to respond.

I, therefore, accepted appointment as Sole Arbitrator in the reference on 20th March 2001 and I confirmed my acceptance to the Charterers that same day, having accepted appointment as Sole Arbitrator pursuant to Section 17(2) of the Arbitration 1996.

Under cover of a letter of 19th March 2001 from the Owners' London solicitors, I received submissions of claim, together with supporting documentation, and I laid down a timetable for further progress in the Arbitration and ordered that the Charterers served submissions by way of defence by close of business, 18th April 2001.

I received a response from the Charterers on 21st March 2001, who made a challenge to my jurisdiction in this case.

On 19th April 2001, I received an application from the Owners that, as the deadline had passed for service of submissions of defence, I make a final and peremptory order for service of the said defence.

Accordingly, on 20th April 2001 I issued a further order, in final and peremptory terms, for service of the submissions of defence by latest close of business Friday 27th April 2001.

*Page 4*

On 29th March 2001, I received a further fax message from the Charterers again expressing their opposition to my jurisdiction in this case.

Under cover of a fax message of 27th April, I received from London solicitors acting on behalf of the Charterers submissions of defence and matters proceeded from thereon by way of appropriate exchanges.

I have considered, in the light of the steps that have been taken, that the Charterers have been given every opportunity to participate in the procedure of this arbitration. I consider it appropriate, therefore, to proceed to my Final Award in the reference.

4.    The seat of the Arbitration is London, England.

5.    The disputes referred to the undersigned concerned claims by the Owners in respect of a balance of demurrage due and owing on 3 voyages under the terms of the Charterparty in a sum of US $27,697.93, together with interest and costs.

The Charterers denied liability.

6.    On 8th March 2002, I published a Final Arbitration Award in which I held that the Owners' claims in respect of a balance of demurrage succeeded in the sum of US $27,697.93, together with interest and costs.

I awarded the Owners interest on the sum of US $27,697.93 at a commercial rate of 7.5% per annum from 15th February 2001, compounded at three monthly intervals, until the date of payment.

In addition, I also awarded the Owners their recoverable costs of the reference and specifically reserved to myself appropriate powers and jurisdiction to determine the Owners' costs of the reference if agreement could not be reached between the parties.

7.    It proved impossible for the Owners to agree their recoverable costs of the reference with the Charterers. They, therefore, submitted to me under cover

*Page 5*

of a fax of 3rd July 2003 a schedule of the costs and disbursements claimed for determination.

I invited submissions from the Charterers on the schedule by way of a fax of 8th July 2003 and ordered a response from the Charterers by latest close of business Friday 18th July 2003. I received no response from the Charterers to my order and made a further order on 22nd July 2003, in final and peremptory terms, for service of the Charterers submissions in relation to the costs claimed by Friday 25th July 2003. I heard nothing further from the Charterers.

In the light of these developments, I considered that the Charterers had been given every opportunity to participate in this final reference as to costs. In the circumstances, I considered it appropriate for me to proceed to my Final Award as to Costs in the reference.

8.      In considering the costs submitted to me for determination, I have applied the general principle that the costs must be reasonably and properly incurred, as well as taking into consideration appropriate market rates for London Maritime solicitors for the periods in question and, of course, the complexity and nature of the case itself.

The total sum claimed by the Owners in respect of their costs of the reference amounted to £7,610.14, which comprised their solicitors' profit costs of £6,220.00 and disbursements of £1,390.14.

The charging rates in the schedule, as claimed by the Owners, included a rate of £220 per hour for the Partner involved in the case.

In support of the schedule of costs, the Owners provided the normal pre-assessment certificate.

I have considered the rate charged by the Partner responsible for this case and have considered that rate to be an appropriate market rate, based on rates for London maritime solicitors during the periods in question for this arbitration. I

*Page 6*

have taken into account the complexity and nature of this case and approve the rate charged by the Partner as being fair and reasonable.

9.      The overall time spent in preparation and resolution of the issues in this case, leading to the publication of my Final Award, totalled 21.3 hours.

I am satisfied that the time spent by the Partner was reasonable, taking into consideration the nature of this case and the complications relative to the arrest of this vessel at Motril, and I have accepted in full the hours spent. Further time was, of course, spent by the Partner in relation to routine attendances with his clients, as well as discussions with the appointed legal correspondents in Spain, Lebrero & Co., all of which I find to be fair and reasonable in the circumstances of this matter.

10.     Finally, with regard to the disbursements claimed in this case, the majority of the disbursements claimed related to the costs of the attending legal correspondent in Spain, following the arrest of the vessel at Motril and relative to jurisdictional matters, which I find to be reasonable. I have accordingly allowed the disbursements claimed of £1,390.14 in full.

In summary, therefore, I have considered the costs claimed by the Owners in respect of their costs of the reference to be fair and reasonable and have allowed those costs in the total sum of £7,610.14.

**NOW I,** the undersigned William Robertson, having accepted the burden of Sole Arbitrator in this arbitration, and having carefully and conscientiously examined the costs schedules as submitted by the Owners, and having considered the same, **DO HEREBY MAKE, ISSUE AND PUBLISH** this my **FINAL AWARD AS TO COSTS** as follows: -

**I HEREWITH DETERMINE AND SETTLE** the Owners' costs of the reference in a total sum of £7,610.14.

*Page 7*

**I AWARD AND ADJUDGE** that the Charterers shall forthwith pay to the Owners the sum of £7,610.14 (Seven Thousand, Six Hundred & Ten Pounds Sterling and Fourteen Pence), together with interest thereon at a rate of 6% per annum, compounded at three monthly intervals, from the date of this Award until the date of payment.

**I FURTHER AWARD AND ADJUDGE** that the Charterers shall bear their own and the Owners' recoverable costs of this reference as to costs, to be assessed by me if so requested, for which I hereby reserve appropriate powers and jurisdiction. The Charterers shall also bear and pay the cost of this my **FINAL AWARD AS TO COSTS**, which **I HEREBY DETERMINE AND SETTLE** in the sum of £675.00, inclusive of my fees and interlocutory charges.

**ALWAYS PROVIDED** that if, in the first instance, the Owners have paid any sum in respect of the cost of this Award, they shall be entitled to immediate reimbursement from the Charterers of the sum so paid, together with interest thereon at the rate of 6% per annum, compounded at three monthly intervals, from the date of this Award until the date of reimbursement.

**GIVEN** under my hand in London            12th August 2003

**WILLIAM ROBERTSON**                    **WITNESS**

**IN THE MATTER OF THE ARBITRATION ACT 1996**

**AND**

**IN THE MATTER OF AN ARBITRATION**

**BETWEEN**

**COSENA SRL CONSTANTZA (ROMANIA)**

**Claimants**
(Owners)

**AND**

**INTERMONTE S.A. of Seville, Spain**

**Respondents**
(Charterers)

## m.v. "SALVA"

## Charterparty dated 30th May 2000

## FINAL AWARD AS TO COSTS

Exhibit 4

IN THE HIGH COURT OF JUSTICE                          Claim no. 2007 Folio 1053
QUEEN'S BENCH DIVISION
COMMERCIAL COURT

IN THE MATTER OF THE ARBITRATION ACT 1996
AND
IN THE MATTER OF AN ARBITRATION

BETWEEN



COSENA SRL CONSTANZA (ROMANIA)
                                                             Claimant

And

INTERMONTE S.A. SEVILLA (SPAIN) (now renamed BODEGAS VALDIVIA S.A.)
                                                             Respondent

M/V "SALVA"

Charterparty dated 30th May 2000

---

JUDGMENT

---

UPON a Tribunal consisting of sole arbitrator Mr William Robertson publishing an
award dated 8th March 2002 and further to Mr Justice Tomlinson's Order dated 26th
June 2007 giving liberty to enforce the said award and to enter judgment in terms of the
said award

IT IS ORDERED ADJUDGED AND DECLARED that:

1.      the Respondent pay to the Claimant the sum of US$ 27,378.90 in respect of the
        judgment amount together with compound interest thereon; and

2.      the Respondent pay to the Claimant the sum of £2,135.00 in respect of Award
        costs and compound interest thereon.

Dated this   5th  day of  October   2007

Ex 4

**IN THE HIGH COURT OF JUSTICE**
**QUEEN'S BENCH DIVISION**
**COMMERCIAL COURT**

**IN THE MATTER OF THE ARBITRATION ACT 1996**
**AND**
**IN THE MATTER OF AN ARBITRATION**

**BETWEEN**

**Claim no. 2007 Folio 1053**



**COSENA SRL CONSTANZA (ROMANIA)**

**Claimant**

**And**

**INTERMONTE S.A. SEVILLA (SPAIN) (now renamed BODEGAS VALDIVIA S.A.)**

**Respondent**

**M/V "SALVA"**

**Charterparty dated 30ᵗʰ May 2000**

---

## JUDGMENT

---

UPON a Tribunal consisting of sole arbitrator Mr William Robertson publishing an award dated 12ᵗʰ August 2003 and further to Mr Justice Tomlinson's Order dated 26ᵗʰ June 2007 giving liberty to enforce the said award and to enter judgment in terms of the said award

## IT IS ORDERED ADJUDGED AND DECLARED that:

1.    the Respondent pay to the Claimant the sum of £7,610.14 in respect of the Claimant's costs with compound interest thereon; and

2.    the Respondent pay to the Claimant the sum of £675.00 in respect of Award costs and compound interest thereon.

Dated this  5th  day of October    2007

## ATTORNEY VERIFICATION

State of New York    )
                       ) ss.:
County of New York   )

MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

1.     I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.     The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

3.     The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Michael E. Unger

Sworn to before me this
19th day of October, 2007

_____
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/ 08